UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: ADAM SUELFLOW,            No. 7-07-12045 ML

      Debtor.

_____

AMBANK,

      Plaintiff,

v.                                      Adversary No. 08-1070 M

ADAM SUELFLOW,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER is before the Court following a trial on the merits to determine whether to revoke the Defendant's discharge under 11 U.S.C. § 727(d). Plaintiff AmBank asserts that Defendant Adam Suelflow failed to disclose on his statements and schedules a sale of real property that occurred less than two years before the filing of the petition from which he received over $90,000, and that Defendant knowingly and fraudulently reported in his statements and schedules that he received only $525.00 from the sale of another parcel of real property when, in fact, he received over $31,000.00. After consideration of the evidence presented at trial, and being otherwise sufficiently informed, the Court finds that, while the Defendant's mis-statements and omissions contained in his statements and schedules would otherwise have supported a claim to deny the Defendant's discharge under either 11 U.S.C. § 727(a)(4)[1],

---

[1]That section provides, in relevant part:
    The court shall grant the debtor a discharge, unless –
        (1) the debtor knowingly and fraudulently, in or in connection with the case,
            (A) made a false oath or account[.]
11 U.S.C. § 727(a)(4)(A).

AmBank failed to exercise sufficient diligence in investigating the facts to support its claims and, therefore, cannot demonstrate that it did not have reason to know of the Defendant's fraud until after the discharge was entered. Accordingly, the Court will dismiss Plaintiff's complaint for revocation of the Defendant's discharge under 11 U.S.C. § 727(d).

FINDINGS OF FACT

1. Defendant Adam Suelflow filed a voluntary petition under Chapter 7 of the Bankruptcy Code, along with a Statement of Financial Affairs ("SOFA") and Schedules A - J on August 21, 2007.

2. In response to the request in paragraph 10 of the SOFA for information concerning "Other Transfers" made within the two year period preceding the commencement of the bankruptcy proceeding, Defendant reported that on January 26, 2007 he received $525.00 from the sale of certain real property known as the Iron Horse Corral Motorcycle shop building ("Iron Horse Property).

3. Defendant and his former business partner, Thomas J. Burke, sold the Iron Horse Property to Mr. James U. Fleming, Jr. for $549,352.00. *See* Exhibit 3 - Closing Statement.

4. Defendant received $31,292.81 from the sale of the Iron Horse Property. *See* Exhibit 2 - Cancelled check payable to Defendant Adam Suelflow in the amount of $31,292.81.

5. Defendant acknowledged that he received $31,292.81 from the sale of the Iron Horse Property, but stated that he cashed the check and used the proceeds to pay workers in connection with his construction business and to pay his own living expenses, and that the $525.00 he reported on the SOFA was the money he had left at the time his bankruptcy was filed. Defendant did not keep any records to document the use of the proceeds from the sale of the Iron

2

Horse Property.

6. Defendant sold his interest in a parcel of commercial real estate consisting of 1.891 acres of undeveloped real property located adjacent to Highway 180 in Silver City, New Mexico ("Undeveloped Property") on or about May 10, 2006.

7. Defendant does not recall whether he received any proceeds from the sale of the Undeveloped Property, and believes that the proceeds were used to pay off the mortgage secured by the Undeveloped Property and to pay a portion of the loan to AmBank.

8. Defendant did not disclose the sale of the Undeveloped Property in his statements and schedules filed in his bankruptcy case.

9. Defendant did not amend the SOFA.

10. Defendant's tax return from 2007 reflects a capital gain in the amount of $31,292.12 from the sale of the Iron Horse Property.

11. In 2003 Plaintiff AmBank extended a loan for floor plan financing in the approximate amount of $250,000 to Defendant Adam Suelflow, his partner, Mr. James Burke, and a third party, Mr. H.R. Quintero. All three guaranteed the loan. The loan was secured by the inventory of the business, a Harley Davidson motorcycle shop, but was not secured by any real property. Mr. Quintero was released from the note and guaranty in 2004 or 2005. *Testimony of Mr. Mike Trujillo, Executive Vice President of AmBank.*

12. In 2006, Mr. Burke was in poor health and he and Defendant decided to liquidate their business assets.

13. Mr. Burke and Defendant surrendered the inventory from their business to AmBank.

14. They informed AmBank that they sold the Iron Horse Property, but that they had not

netted any proceeds from the sale. *Testimony of Mr. Trujillo.*

15. In April 2007 Mr. Fleming approached AmBank because he wanted to make an offer to purchase a trailer that was part of the inventory Mr. Burke and Defendant had turned over to AmBank. It was at this time that AmBank learned from Mr. Fleming of the sale of the Iron Horse Property and that there were significant net proceeds from the sale. *Testimony of Mr. Trujillo.* Mr. Fleming led AmBank to believe that he would give them copies of the documents from the closing of the Iron Horse Property, but he did not. AmBank did not attempt to obtain the documents from the title company at that time.

16. AmBank attended Defendant's meeting of creditors on September 25, 2007.

17. Pre-petition, AmBank filed a lawsuit and obtained a judgment against Mr. Burke and Defendant for the unpaid balance under its floor plan financing loan. AmBank learned that Mr. Burke had moved to Arizona and purchased a home there, so AmBank took steps to file its judgment against Mr. Burke's Arizona residence. *Testimony of Mr. Trujillo.*

18. The last day to file a compliant objecting to the Defendant's discharge or to the dischargeability of a particular debt was November 26, 2007.

19. Defendant received a discharge on December 14, 2007. *See* Case No. 7-07-12045 ML, Docket No. 15.

20. Plaintiff AmBank subpoenaed the documents relating to the sale of the Iron Horse Property from Western New Mexico Title Company in the spring of 2008. *Testimony of Mr. James Gruwell, manager of Western New Mexico Title Company.*

21. AmBank filed this adversary proceeding on June 10, 2008.

## CONCLUSIONS OF LAW

4

1. Revocation of discharge is governed by 11 U.S.C. § 727(d), which provides, in relevant part:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge[.]

11 U.S.C. § 727(d)(1).

2. The Court will construe the revocation of discharge provisions strictly against the creditor and liberally in favor of the debtor.[2]

3. A creditor seeking to revoke a debtor's discharge under 11 U.S.C. § 727(d)(1) must file a complaint for revocation of discharge within one year after the debtor has been granted a discharge. 11 U.S.C. § 727(e)(1).

4. AmBank timely filed its complaint seeking to deny Defendant's discharge under 11 U.S.C. § 727(d)(1).

5. The creditor bears the burden of proving each element necessary to its claim for revocation of a debtor's discharge by a preponderance of the evidence.[3]

---

[2]*The Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver),* 367 B.R. 795, 800 (Bankr.D.N.M. 2007), *aff'd,* 378 B.R. 418 (10th Cir. BAP 2007)(stating that the revocation statute "is construed strictly against the objecting party and liberally in favor of the debtor.")(citations omitted); *Mazer v. Jones (In re Jones),* 178 B.R. 1, 3 (Bankr.D.N.M. 1995)("Section 727(d)(1) is strictly construed against the objector and liberally in favor of the debtor.")(citations omitted); *Lightfoot v. Landry (In re Landry),* 350 B.R. 51, 56 (Bankr.E.D.La. 2006)(same)(citations omitted).

[3]*See Jones,* 178 B.R. at 3 (plaintiff must "prove by a preponderance of the evidence that (1) the debtors obtained their discharge through fraud; and (2) he did not know about the fraud until after the granting of the discharge.")(citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(establishing preponderance of the evidence standard for proving

6. False oaths made in connection with a debtor's bankruptcy proceeding which would warrant a denial of discharge under 11 U.S.C. § 727(a)(4) are sufficient to establish the first element under 11 U.S.C. § 727(d)(1) that a debtor obtained a discharge through fraud. [4] "False oaths" within the meaning of 11 U.S.C. § 727(a)(4) include omissions and mis-statements contained in a debtor's schedules and statements.[5] To deny a debtor's discharge under 11 U.S.C. § 727(a)(4) the false statement must be material, meaning that it relates to the debtor's assets or financial condition[6], and must be made wilfully with intent to defraud.[7]

7. Defendant's misstatement concerning the proceeds he received from the sale of the Iron Horse Property constitutes a false oath within the meaning of 11 U.S.C. § 727(a)(4). His 2007 tax return accurately reflected the full amount of the proceeds he received from the sale of

---

dischargeability claims)).

[4] *See United States Trustee v. Eppers (In re Eppers),* 311 B.R. 826, 831 (Bankr. D.N.M. 2004)(standard for revoking a debtor's discharge under 11 U.S.C. § 727(d) requiring fraud in fact "necessarily implicates the grounds for denial of a debtor's discharge enumerated in § 727(a)."). *See also, Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir. 1991)(stating that revocation of discharge requires that "the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known" and clarifying that it is generally "insufficient that a debtor's fraud rendered a particular debt nondischargeable; claimant must allege that the entire discharge would not have been granted but for debtor's fraud.")(citations omitted).

[5] *Quicken Loans, Inc. v. Splawn (In re Splawn),* 376 B.R. 747, 760 (Bankr.D.N.M. 2007)(citing *In re Reed,* 293 B.R. 65, 69 (Bankr.D.Kan.)(citations omitted).

[6] *See In re Chalik,* 748 F.2d 616, 618 (11th Cir. 1984)(stating that "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.")(citations omitted)

[7] *See In re Calder,* 907 F.2d 953, 955 (10th Cir. 1990)(citing 4 Collier on Bankruptcy, ¶ 727.04[1] at 727-54 to 727-57 (15th ed. 1987)).

6

the Iron Horse Property, yet his SOFA only disclosed receipt of $525.00. The fact that he knew that he was required to report the full amount of the proceeds on his tax return belies his explanation that his partial disclosure on his SOFA was unintentional. But because AmBank had reason to know of the Defendant's false statements within the sixty-day period within which it could have timely filed a complaint objecting to discharge, its effort to revoke the Defendant's discharge under 11 U.S.C. § 727(d), though timely filed within limits imposed by 11 U.S.C. § 727(e)(1), fails.[8]

8. "[A] party requesting revocation of discharge has the burden of proving its lack of knowledge of the fraud before discharge, and a failure to carry this burden is fatal to the party's case." 6 Collier on Bankruptcy ¶ 727.15[3] at 727-75 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2008)(citing *Continental Builders v. McElmurry (In re McElmurry),* 23 B.R. 533 (W.D.Mo. 1982)(remaining citations omitted)).[9]

9. "'[K]nowledge in a § 727(d)(1) revocation action occurs when the party seeking revocation first becomes aware of facts such that he is put on notice of a possible fraud.'" *Neary v. Darby (In re Darby),* 376 B.R. 534, 542 (Bankr.E.D.Tex. 2007)(quoting *Landry,* 350 B.R. at 56). A creditor need not have actual knowledge of the fraud; it is enough to bar an action for

---

[8]*Cf. In re Fehrs,* 391 B.R. 53, 80 (D.Idaho 2008)(dismissing creditor's complaint for revocation of discharge despite proof that debtor's false oaths would have otherwise warranted a denial of discharge under § 727(a)(4) where creditor failed to satisfy the lack of knowledge requirement under § 727(d)).

[9]*See also, In re Landry,* 350 B.R. at 56 (stating that the plaintiff "has the burden of proving all the facts upon which the revocation is conditioned by the statute, including the exercise of diligence in uncovering the facts.")(citing *In re Stein,* 102 B.R. 363 (Bankr.S.D.N.Y. 1989)).

7

revocation of a debtor's discharge if the creditor is put on notice to inquire further in order to timely file a complaint objecting to the debtor's discharge. *Silver,* 367 B.R. at 817. To satisfy the lack-of-knowledge requirement under 11 U.S.C. § 727(d)(1), a "plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud." *Anderson v. Vereen (In re Vereen),* 219 B.R. 691, 696 (Bankr.D.S.C. 1977).

10. AmBank had reason to know of Defendant's fraud prior to the expiration of the deadline for filing complaints objecting to the Defendant's discharge and failed to exercise reasonable diligence to investigate its claims. AmBank first learned of the sale of the Iron Horse Property from Mr. Fleming in the spring of 2007 when he approached AmBank about purchasing a trailer that Defendant and Mr. Burke had turned over to AmBank. Mr. Trujillo testified that the Defendant and Mr. Burke had represented to AmBank that they did not receive any net proceeds from the sale of the Iron Horse Property, yet the purchaser, Mr. Fleming, indicated to AmBank that Mr. Burke and Defendant had received proceeds from the sale. AmBank could have subpoenaed the closing documents at that time, but did not do so until the spring of 2008. AmBank attended the Defendant's meeting of creditors, but did not further investigate the transaction involving the sale of the Iron Horse Property at that time. A trustee is entitled to rely on the statements contained in a debtor's statements and schedules.[10] AmBank, however, was put on notice by Mr. Fleming prior to the filing of Defendant's bankruptcy proceeding that

---

[10] *See Vereen,* 219 B.R. at 696 (stating that, "[a]s a general rule, the trustee is entitled to rely on the truthfulness and accuracy of the debtor's schedules and is not required to assume that the debtor is lying.")(citations omitted).

8

Defendant and Mr. Burke had not been forthcoming about the proceeds from the sale of the Iron Horse Property. The documents AmBank ultimately obtained from the title company, in fact, established that Defendant received over $31,000.00 from the sale of the Iron Horse Property. Under these circumstances, the Court concludes that AmBank failed to exercise reasonable diligence in investigating its claim. Had it done so, it could have timely filed a complaint objecting to the Defendant's discharge. AmBank cannot now sustain a complaint to revoke the Defendant's discharge.

The Court has entered these findings and conclusions in accordance with Rule 7052, Fed.R.Bankr.P. The Court will enter a separate judgment consistent with these findings and conclusions.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: June 23, 2009

COPY TO:

William Perkins
Attorney for Plaintiff
PO Box 1289
Silver City, NM 88062-1289

R. Trey Arvizu, III
Attorney for Defendant
PO Box 1479
Las Cruces, NM 88004-1479

J:\OPINIONS\SuelflowMemorandum727(d).wpd